James D. THOMPSON, Plaintiff,

v.

Jo Anne BARNHART, Commissioner of Social Security, Defendant.

Civil Action No. 02–2504.

United States District Court, E.D. Pennsylvania.

Sept. 10, 2003.

**772**

Robert Savoy, Trevose, PA, for Plaintiff.

Nicholas R. Cerulli, Patricia Anne Stewart, Social Security Administration, Office of the General Counsel, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

RUFE, District Judge.

Plaintiff seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. Jurisdiction is proper under 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for summary judgment. The Court referred this matter to a United States Magistrate Judge for a Report and Recommendation ("R & R"). The Magistrate Judge recommends that this Court deny Plaintiff's motion for summary judgment, grant Defendant's motion, and affirm the Commissioner's decision. Plaintiff filed objections to the R & R. Upon careful and independent consideration of the administrative record, the R & R, and Plaintiff's objections thereto, the Court will accept some portions of the R & R, reject others, and remand to the Commissioner for further proceedings.

## I. BACKGROUND

The R & R presents an exhaustive review of the procedural history, factual background, evidence and the most recent ALJ decision. Plaintiff makes no objection to this portion of the R & R, and the Court hereby adopts and incorporates that portion of it (Parts I–III, pp. 1–8). The following is taken from the R & R and supplemented by information from the Record of Proceedings ("R.").

This case concerns Plaintiff's fourth DIB application, and is the most recent chapter in an administrative and judicial odyssey

that began over twenty-five years ago. On November 16, 1975, when Plaintiff was forty-two years old and working as a sandblaster at the Philadelphia Naval Shipyard, he fell fifteen feet from a scaffold. This accident allegedly resulted in lower back and left leg injuries, and a loss of hearing. Thereafter Plaintiff made unsuccessful applications for DIB on June 23, 1978; May 13, 1980; and July 27, 1983.

On November 17, 1987, Plaintiff made his most recent DIB application, which was denied initially and upon reconsideration. Unlike his previous applications, Plaintiff sought an administrative hearing before an administrative law judge ("ALJ"), which was held on February 14, 1990.[1] (R. 57–80) In a March 30, 1990 written decision, the ALJ denied Plaintiff's application; however, the Appeals Council subsequently vacated this decision and remanded for further consideration. (R. 51–53) The same ALJ held a supplemental hearing on May 9, 1991, (R. 81–127), and issued an August 28, 1991 decision, again finding Plaintiff not disabled. (R. 35–40)

On August 17, 1992, the Appeals Council vacated the ALJ's second decision, and again remanded for further proceedings. In doing so, the Appeals Council extended his insured status through December 31, 1981; ordered the reopening of Plaintiff's July 27, 1983 application; and directed that a different ALJ evaluate the severity of Plaintiff's impairments, including the extent of a mental impairment, as evidenced by possible alcohol abuse during his period of coverage. (R. 25–28)

On January 26, 1993, a third hearing was held before a new ALJ, where Plaintiff and a vocational expert ("VE") testified. (R. 128–64) The ALJ denied Plaintiff's application in a March 27, 1993 written decision, concluding that Plaintiff

had severe back injury residuals and a history of drinking, but that he did not have an impairment or combination of impairments listed in or medically equal to one listed in the Social Security Regulations. The ALJ also found that Plaintiff's subjective complaints of pain and distress lacked credibility. Further, the ALJ determined that, since Plaintiff's revised onset date of March 1980, Plaintiff had the residual functional capacity to perform the full range of sedentary work and some light work. (R. 12–18)

The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision final. (R. 4–5) On November 10, 1993, Plaintiff sought judicial review of the ALJ's decision in this Court. *Thompson v. Shalala,* Civ. A. No. 93–5944 (E.D.Pa.). The Honorable Ronald L. Buckwalter referred the case to Magistrate Judge James R. Melinson for an R & R. Judge Melinson recommended that the case be remanded to the Commissioner to address the question of Plaintiff's alcoholism. (R. 479–92). On January 11, 1995, Judge Buckwalter adopted and approved Judge Melinson's R & R, and the case was remanded back to the Commissioner. (R. 496) An unexplained delay of a year and half followed.

Another hearing was finally held before an ALJ on June 18, 1996 where Plaintiff and a medical expert, Dr. Dewey A. Nelson, testified. (R. 447–73) On August 10, 1996, in a fourth written ALJ decision, Plaintiff's application was denied. (R. 442–446) The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision final. (R. 430–32)

In July 1997, Plaintiff filed a second action in this Court seeking judicial review of the Commissioner's final decision.

1. Plaintiff was represented by counsel at this and all subsequent administrative and judicial proceedings.

*Thompson v. Shalala*, Civ. A. No. 97–4365 (E.D.Pa.). The Honorable Clifford Scott Green referred the case to Magistrate Judge Diane M. Welsh, who issued an R & R on March 12, 1998. Judge Welsh rejected several of Plaintiff's arguments,[2] but recommended that the case be remanded for further evaluation of Plaintiff's hearing loss. (R. 523–40). On April 21, 1998, Judge Green adopted and approved the R & R "solely as to the recommendation that this action be remanded for further proceedings." Judge Green denied Plaintiff's motion for summary judgment "without prejudice to reinstatement after a decision on remand," and remanded for further proceedings "on the issue of whether the plaintiff suffers from a non-exertional impairment in the form of a hearing loss, and if so, the extent of the impairment." Finally, Judge Green remanded "without prejudice to either parties' right to continue to assert on reinstatement all legal positions heretofore raised on motions for summary judgment." (R. 541–42)

A fifth hearing was held before an ALJ on December 17, 2001, with Plaintiff and a VE testifying. (R. 509–521) On January 30, 2002, in a fifth written decision, the ALJ determined that Plaintiff was not disabled. (R. 504–508) The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision final.

Having exhausted all administrative remedies, Plaintiff again sought judicial review of the Commissioner's decision by filing the instant action on April 26, 2002. After receiving three thirty-day extensions of time in which to answer the complaint, and having unsuccessfully sought an extension of time to respond to Plaintiff's motion for summary judgment, Defendant filed her cross-motion for summary judgment on January 17, 2003. The case was then referred to a Magistrate Judge for an R & R, which issued on May 28, 2003. Plaintiff filed objections thereto on June 11, 2003, and the case is now ripe for a decision. At the time of writing, Plaintiff is over seventy years old, and his DIB application has gone unresolved for approximately fifteen years.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

Under the Social Security Act, a claimant is disabled if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve (12) months." 42 U.S.C. § 423(d)(1)(A). Under the medical-vocational regulations, as promulgated by the Commissioner, a five-step sequential evaluation is to be utilized to evaluate disability claims. In sum, the analysis requires the Commissioner to determine:

(1) Is the claimant working? If not,

(2) Does the claimant have a severe impairment? If so,

(3) Is/are the claimant's impairment(s) listed in, or equivalent to, an impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P, Regulations No. 4? If not,

(4) Does the impairment prevent the claimant from doing past relevant work? If so,

(5) Does the claimant's impairment prevent him from doing any other work which exists in the national or regional economy?

*See* 68 Fed.Reg. 51153–01, 51154–55, 51161–62 (Aug. 26, 2003) (to be codified at

---

**2.** Plaintiff reasserts many of the same arguments in the present action. *See* discussion *infra.*

20 C.F.R. § 404.1520(a)(4)), 2003 WL 22001943; *Fastner v. Barnhart,* 324 F.3d 981, 983–84 (8th Cir.2003) (discussing five-step inquiry). In pressing his or her claim, the burden is solely upon the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to work. Once this showing is made, the burden of proof then shifts to the Commissioner to show that the claimant, given his or her age, education and work experience, has the ability to perform specific jobs that exist in the economy. *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979). In this case, the ALJ reached step five of the five-step sequential evaluation in finding that Plaintiff was not disabled. (R. 507–08)

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* However, judicial review of a final decision of the Commissioner is limited. The Court is bound by the findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir.1989).

Substantial evidence has been defined as "more than a mere scintilla" but somewhat less than a preponderance of the evidence, or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Jesurum v. Sec'y of the United States Dep't of Health & Human Servs.,* 48 F.3d 114, 117 (3d Cir.1995). The standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evi-

dence." *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999).

In reviewing the R & R, the Court must review *de novo* only "those portions" of the R & R "to which objection is made." 28 U.S.C. § 636(b)(1).

### III. *DISCUSSION*

Plaintiff presented four separate arguments in his motion for summary judgment, and the Magistrate Judge rejected all of them in the R & R. Plaintiff raises objections as to each of the Magistrate Judge's conclusions, and reasserts his arguments presented in his motion. Generally, Plaintiff contends that the evidence of record demonstrates that he is disabled, and the ALJ's finding to the contrary is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ (1) ignored or failed to explain the rejection of the opinion of several physicians; (2) failed to provide adequate reasons for finding Plaintiff's testimony not fully credible; (3) improperly relied upon inadequate vocational testimony; and (4) failed to adequately consider Plaintiff's alcoholism. The Court will address each of these arguments in turn.

### A. Physicians' Opinions

Plaintiff claims that the ALJ failed to adequately explain the rejection of three physicians' opinions: Dr. T.A. Javian, Jr.; Dr. Raymond O. Stein; and Dr. Marc S. Zimmerman.

### 1. Dr. T.A. Javian

■ Dr. Javian was not one of Plaintiff's treating physicians, but rather examined him on three occasions: March 9, 1976; September 14, 1976; and October 11, 1977. (R. 370–71, 374–76) Plaintiff contends that Dr. Javian's notes demonstrate a belief that Plaintiff was experiencing pain that rendered him disabled, and that the ALJ

failed to set out any reason for rejecting this opinion. The Magistrate Judge rejected this assertion in the R & R.

Dr. Javian diagnosed Plaintiff with lumbosacral strain, and released him to return to light duty work on September 14, 1976, but no such work was available. (R. 370) On October 11, 1977, after listing Plaintiff's history and symptoms, Dr. Javian opined that Plaintiff "should probably be allowed to retire at a disability status. The disability should be minimum." (R. 371) On January 17, 1978, Dr. Javian summarized his diagnosis accordingly:

> In my opinion ... this patient has a minimal disability.... The patient's objective physical findings are minimal. The accumulated objective information including x-rays and my physical examinations of him do not support the degree of his stated symptoms.... In my opinion, Mr. Thompson was never considered to be totally disabled. His situation was given credence and he was treated appropriately. The patient does have a pain syndrome. The ability of patient's [sic] to deal with pain is variable and this patient probably has extreme difficulty living with his condition. I still feel, as I recommended previously, that this patient should retire at a disability status.

(R. 370) Plaintiff argues that, although these notes are "not a paragon of lucidity," they demonstrate that Dr. Javian believed Plaintiff's pain to be real and disabling. Thus, contends Plaintiff, the ALJ erred by failing to provide an explanation for rejecting Dr. Javian's views. The Magistrate Judge rejected this argument, opining that the August 10, 1996 ALJ decision[3] adequately summarized Dr. Javian's notes. Moreover, the Magistrate Judge concluded, the notes were "inconsistent at best," and suffered from "inherent ambiguity," and thus were "of very limited value." These characterizations and conclusion do not appear in the ALJ decision.

Plaintiff objects that in reaching these conclusions, the Magistrate Judge exceeded his limited scope of review. Specifically, Plaintiff contends that the Magistrate Judge undertook an independent analysis of the administrative record, rather than focusing only on the reasons set forth by the ALJ. This Court agrees. As the Third Circuit Court of Appeals has noted, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Fargnoli v. Massanari*, 247 F.3d 34, 44 n. 7 (3d Cir.2001) (quoting *SEC v. Chenery*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943)). As such, it is impermissible for a district court to rectify ALJ errors by making an independent analysis and relying on information not relied upon by the ALJ. *Id.* Because this appears to be what the Magistrate Judge recommends, the Court must reject the R & R on this issue.

■ The August 10, 1996 ALJ decision does mention the treatment Plaintiff received from Dr. Javian, (R. 444), but nowhere does it or any other ALJ decision squarely confront Dr. Javian's conclusion that Plaintiff was disabled to some degree, and that he should retire at a disability status. This omission is contrary to an ALJ's duties, for "when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them," and in doing so "an explanation ... of the reason why probative evidence has been rejected is required

---

**3.** Due to the number of remands, the parties make reference to different ALJ decisions for different issues. Except to the extent they modify or supplement previous findings, each ALJ decision adopts and incorporates the issues, summary, and analyses of previous decisions, in theory creating a single ALJ decision.

so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 705, 706–07 (3d Cir.1981); *see also Fargnoli,* 247 F.3d at 43 (ALJ "must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence"). Therefore, the Court will sustain Plaintiff's objection, and order on remand that the ALJ adequately address Dr. Javian's opinion.

## 2. Dr. Raymond O. Stein

Like Dr. Javian, Dr. Stein was not a treating physician. Rather, he examined Plaintiff once on November 9, 1978, although he may have examined Plaintiff a second time on December 27, 1978. (R. 382–84) Dr. Stein concluded that Plaintiff had disc damage which caused considerable pain and discomfort. In doing so, Dr. Stein also noted the appearance of an overbearing emotional reaction which, when combined with the disc damage, rendered Plaintiff disabled. (R. 384) Plaintiff contends that the ALJ ignored Dr. Stein's opinion, and failed to provide an adequate explanation for rejecting his views.

As the Magistrate Judge correctly points out, Plaintiff's argument is not supported by the record. The August 10, 1996 ALJ decision specifically mentions Dr. Stein's November 9, 1978 examination. (R. 444) Moreover, the ALJ notes that a subsequent psychiatric evaluation concluded there was no evidence of psychiatric impairment or emotional disorder. Because Dr. Stein's finding of disability was based in part upon Plaintiff's emotional condition, which was later found to have no psychological basis, the ALJ rejected Dr. Stein's opinion. (R. 444) This conclusion is supported by substantial evidence. The Court will overrule Plaintiff's objection, and adopt the R & R (pp. 12–13) on this issue.

## 3. Dr. Marc S. Zimmerman

■ Dr. Zimmerman, an orthopedic surgeon, was one of Plaintiff's treating physicians for a number of years. On September 6, 1983, Dr. Zimmerman reported that he diagnosed Plaintiff as having "chronic low back pain." In support thereof, Dr. Zimmerman noted that Plaintiff had mild degenerative joint disease at the left sacroiliac joint and that a CAT scan had revealed a slight bulge at the L5–S1 interspace. He also reported pain associated with these conditions, which are "worsened by bending, lifting, sitting for long periods." [sic] (R. 389) The record also contains Dr. Zimmerman's letter of June 18, 1991 in which he opines, "I do not believe that [Plaintiff] is able to work at this time." (R. 423)

In rejecting Dr. Zimmerman's opinion, the ALJ wrote in a March 27, 1993 decision:

> While ... treating physician Dr. Zimmerman states that [Plaintiff] is totally disabled ... the only apparent diagnosis from Dr. Zimmerman is for "chronic low back pain".... Further, all clinical laboratory studies are negative except for MRI testing, which is noted to have shown a bulging disc (at L5–S1), a finding lacking clinical significance. Large percentages of asymptomatic patients have this as an MRI finding (1/3 in one study, 24–37 percent in another, *Journal of Bone and Joint Surgery,* vol. 72A, No. 3, March 1990, p. 403).

(R. 15) Plaintiff contends that the ALJ's characterization of the record is inaccurate, and that the ALJ did not accord due weight to Dr. Zimmerman's opinion.

■ An ALJ must "accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel,* 225

F.3d 310, 317 (3d Cir.2000) (internal quotes and citations omitted); 20 C.F.R. § 404.1527(d)(2) (opinion of treating physician is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). In evaluating such evidence, the ALJ "must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Morales,* 225 F.3d at 317. If the ALJ rejects the treating physicians' opinion, it cannot be "for no reason or for the wrong reason." *Id.* When rejecting a treating physician's opinion, "an ALJ may not make speculative inferences from medical reports," and may reject the opinion "outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (internal quotes and citations omitted); *see also Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir.1999).

As Plaintiff points out, the ALJ is in error when she writes that "all clinical laboratory studies are negative except for MRI testing." (R. 15) In fact, the record contains other clinical analyses that would tend to support Plaintiff's claim of disability, including but not limited to findings of reduced flexibility (R. 379); left calf and quadricep atrophy (R. 368, 379); and "moderate slowing" of the peroneal nerve (R. 381). Accordingly, insofar as an absence of positive clinical conclusions constituted a subsidiary finding explaining her rejection of Dr. Zimmerman's opinion, the ALJ's decision on this point was without substantial evidence. It was not permissible for the ALJ to reject Dr. Zimmerman's

opinion for this "wrong reason." *Morales,* 225 F.3d at 317.

Also problematic is the ALJ's determination that a finding of a "bulging disc (at L5–S1)" lacks "clinical significance." (R. 15) In support of this statement, the ALJ cites statistics from a medical journal, but cites no medical evidence in the case record. The fact that a significant number of patients diagnosed with a bulging disc experienced no symptoms says little about whether *this Plaintiff* is disabled, or more to the point, whether Plaintiff's long-time treating physician's opinion to that effect should be discounted.[4] Although this evidence might be relevant, without citing any other substantial contrary medical evidence of record, it cannot serve as the basis for rejecting Dr. Zimmerman's opinion. *See Plummer,* 186 F.3d at 429 ("an ALJ may not make speculative inferences from medical reports").

Finally, it appears that the ALJ considered Dr. Zimmerman's diagnosis of "chronic low back pain" to be in and of itself insufficient to sustain Dr. Zimmerman's conclusion that Plaintiff was disabled. This somewhat oblique conclusion, if that in fact is what the ALJ intends, is unsupported by good reason, *see Fargnoli,* 247 F.3d at 43 (ALJ "must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence"); and fails to confront the rule of this Circuit that pain may be disabling, and that a claimant's assertions of pain must be given serious consideration. *See Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981). In treating Plaintiff, Dr. Zimmerman accounted for Plaintiff's pain, (R. 225, 379, 381), concluded it was "directly

---

4. Insofar as this portion of the ALJ's decision represented a lay opinion, it was improper. The ALJ is entitled to reject a treating physician's opinion, but not simply by making a different medical judgment. *Morales,* 225 F.3d at 317 (ALJ's "lay opinion" is not proper basis for rejecting treating physician opinion); *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988) ("medical judgment of treating physician can be rejected only on the basis of contradictory medical evidence").

related" to Plaintiff's accident, and opined that Plaintiff was disabled. (R. 423) The ALJ is required to consider this evidence while recognizing that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 1529(c)(3).

Because this portion of the ALJ's opinion lacks substantial evidence, the Court will sustain Plaintiff's objection, and remand this issue to the Commissioner.[5]

## B. Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide adequate reasons for finding Plaintiff's testimony at the February 14, 1990 hearing not credible. The ALJ wrote in her March 27, 1993 decision:

> [Plaintiff's] subjective allegations regarding the nature and extent of his pain and limitations being of a disabling nature are not credible under SSR 88–13. There is no evidence that his activities of living were severely restricted (i.e., he socialized with friends frequently, used public transportation as needed, and avoided *heavy* lifting, stooping, kneeling, bending and climbing—(Exhibit 44)). Moreover, there is no evidence of any medication or treatment regimen of strength or intensity as would customarily be required by a person suffering from disabling pain and distress.

(R. 15–16) The ALJ also found in 2002[6] that "[w]hile the doctors thought [Plaintiff]

had back neuropathy, symptoms were much out of proportion to what one would expect, thus reflecting an exaggeration of symptoms." (R. 445)

The Social Security regulations set out a two-step analysis for evaluating a claimant's subjective complaints, including pain. A claimant must first establish a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all other evidence, could lead to a conclusion of disability. 20 C.F.R. § 404.1529(a)-(b). In this case, there is no dispute that objective evidence establishes the existence of medically determinable physical impairments that could reasonably be expected to produce Plaintiff's alleged symptoms, which the ALJ also found to be severe. (R. 507, finding # 3)

Once this determination is made, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. 20 C.F.R. § 404.1529(c). This task "obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir.1999).

In addition to objective medical evidence, the ALJ may consider the following factors in evaluating the credibility of a claimant's statements:

---

**5.** The Magistrate Judge concluded that the ALJ's decision as to Dr. Zimmerman was supported by substantial evidence. For the reasons stated above, the Court disagrees, and thus rejects the R & R on this point. The Magistrate Judge opined in the R & R that Dr. Zimmerman's 1991 opinion that Plaintiff was disabled was not relevant to the critical issue of whether Plaintiff was disabled when his eligibility for disability benefits expired, approximately ten years earlier. Because this reasoning did not appear in the ALJ's opin-

ion, it is not an appropriate grounds for accepting the ALJ's determination. *See Fargnoli,* 247 F.3d at 44 n. 7; *see also* discussion *supra* at Part III.A.1.

**6.** The January 30, 2002 ALJ decision adopts the findings regarding Plaintiff's subjective complaints of pain discussed in the August 10, 1996 decision, (R. 507), which in turn adopted the analysis in the March 27, 1993 decision. (R. 442)

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96–7p, "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," 1996 WL 374186, at *3. An ALJ is permitted to reject a claimant's subjective testimony if he finds it is not credible, but the ALJ must articulate his reasons for doing so, and those reasons must be grounded in the evidence. *See Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 433 (3d Cir.1999).

■ Although the ALJ's reasons for finding Plaintiff not credible are not particularly compelling, they are sufficient given the deference this Court must afford the ALJ's decision. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ("substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). The factors considered by the ALJ correspond to several of those outlined in SSR 96–7p, and tend to cast some doubt on the alleged intensity and persistence of Plaintiff's symptoms. The most appreciable reason given is the doctors' findings that Plaintiff's symptoms were out of proportion to what one might expect, and thus reflected an exaggeration of symptoms.[7] (R. 445) Accordingly, because the ALJ set forth a reasoned basis, grounded in the record, for why Plaintiff's complaints were not credible, this portion of the decision is supported by substantial

---

7. Less convincing is the ALJ's citation to Plaintiff's ability to engage in daily activities, and Plaintiff's medication and treatment regimen. It is well-established that "sporadic or transitory activity does not disprove disability," and having a disability does not mean that "a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano,* 637 F.2d 968, 971–72 (3d Cir.1981). Merely because Plaintiff could socialize and use public transportation does not necessarily mean that his complaints of being unable to sit or stand for prolonged periods of time were not credible. (R. 71–73) After all, sustained sitting and standing are not always required in order to engage in these activities. As to whether Plaintiff set forth "evidence of any medication or treatment regimen of strength or intensity as would customarily be required by a person suffering from disabling pain and distress," (R. 16), the ALJ makes this statement in a vacuum, without reference to what is "customarily required" in Plaintiff's circumstances. A lack of citation on this point raises the question of whether the ALJ is impermissibly relying on her own lay opinion. *Morales,* 225 F.3d at 317 (ALJ may not rely on lay opinion); *Kelley v. Sullivan,* Civ. A. No. 89–6135, 1991 WL 157318, at *6 (E.D.Pa. Aug. 8, 1991) (ALJ may not "draw inferences concerning the severity of a plaintiff's impairment based upon the medications prescribed if such inferences derive only from the ALJ's lay opinion and are not supported by substantial evidence"). Despite these weaknesses in the ALJ's analysis, the Court is constrained by the standard of review and must affirm the Commissioner's decision on this issue. *See Terwilliger v. Chater,* 945 F.Supp. 836, 844 (E.D.Pa.1996) ("[I]t is not the Court's function to substitute its judgment for that of the Commissioner.").

evidence. Plaintiff's objection is overruled as to this issue, and the Court will adopt the conclusion of the R & R, subject to the discussion *supra*.

## C. Vocational Expert Testimony

Vocational expert ("VE") Steve Gumerman, Ph.D., testified at the December 17, 2001 hearing. Plaintiff argues that the testimony elicited failed to conform to either the remand order or applicable legal principles, and lacked foundation. In addition, Plaintiff argues that the ALJ failed to make an inquiry required by Social Security regulations.

■ Judge Green remanded this case to the Commissioner "for further proceedings on the issue of whether the plaintiff suffers from a non-exertional impairment in the form of a hearing loss, and if so, the extent of the impairment." (R. 542) An ALJ may not rely exclusively on the Medical Vocational Guidelines, *i.e.*, the "grids," to determine if a claimant can perform work in the national economy in cases where the claimant suffers from impairments of both an exertional (*i.e.*, strength demands) and non-exertional (*i.e.*, related to other demands) nature. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir.2000). Rather, there must be some other evidence of record in making this determination. *Id.* at 270. Because this is such a case, a VE testified at the hearing.

The ALJ asked the VE whether a moderate high frequency hearing loss in one ear would significantly erode the occupational base of sedentary work. (R. 512) The VE testified that it would not. (R. 512, 514) The VE also testified that an inability to work on ladders, scaffolding or ramps would not significantly erode the occupational base of sedentary work noticed under the medical-vocational guidelines because sedentary work does not require climbing ladders, scaffolding or ramps. (R. 513)

Plaintiff's argument that the VE's testimony lacked foundation is based on his cross-examination at the hearing. When asked which of the 137 sedentary unskilled occupations listed in the Dictionary of Occupational Titles ("DOT")[8] may be affected by Plaintiff's limitations, the VE testified that he would "have to see the individual titles and, kind of go through them one by one." (R. 513–14) Plaintiff contends that this testimony demonstrates that the VE was not familiar with the occupational base that was the subject of his testimony.

Plaintiff's argument on this point is without merit. First, Plaintiff did not object to the VE testifying as an expert witness at Plaintiff's hearing. (R. 512) More importantly, as explained in greater detail in the R & R at 17–18, the VE further clarified his testimony, and demonstrated sufficient foundation for his testimony about unskilled sedentary work. (R. 514) (VE testifying that use of ladders is not part of sedentary work, and explaining why high frequency hearing loss in one ear would not impact most sedentary jobs if a person can hear in the other, unaffected ear) Accordingly, the Court will overrule Plaintiff's objection on this point, and adopt the reasoning and conclusion of the R & R (pp. 16–18).

■ However, as Plaintiff points out, the ALJ failed to elicit testimony from the VE as to whether specific jobs exist that Plaintiff is capable of performing. As such, this information does not appear in

---

**8.** As explained in the R & R at footnote 11, the Dictionary of Occupational Titles, published by the United States Department of Labor, is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work. *See* http://www.oalj.dol.gov/libdot.htm.

his written decision. (R. 504–508) After a claimant shows an inability to return to his customary occupation, the Government bears the burden of showing that a claimant can perform specific jobs that existed in significant numbers in the national economy. *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979); 68 Fed.Reg. 51153–01, 51161–63 (Aug. 26, 2003) (to be codified at 20 C.F.R. §§ 404.1520, 404.1560), 2003 WL 22001943. Here, no such testimony or findings appear, contrary to regulatory and judicial mandate. *See Welch v. Bowen,* 854 F.2d 436, 439 (11th Cir.1988) ("[T]he ALJ must articulate specific jobs that exist and that the claimant is capable of performing.") (internal quotes and citation omitted); SSR 83–12, "Titles II and XVI: Capability to Do Other Work—the Medical–Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges," 1983 WL 31253, at *5 ("Whenever vocational resources are used, and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country."). As the Third Circuit Court of Appeals has explained, the Commissioner must be specific when discussing whether a claimant can perform other work:

> The Secretary must persuade an ALJ—and ultimately, in most cases, a court—

that jobs exist in the national economy that the claimant is able to fill. One possible method of satisfying this burden, of course, might be to introduce testimony from a vocational expert as to which, if any, positions can be performed by a person possessing the applicant's particular skills; courts have long found such a process to be consonant with the requirements of the Act.

*Santise v. Schweiker,* 676 F.2d 925, 935 (3d Cir.1982). Having failed to elicit such testimony, and having failed to otherwise make such a finding in the January 30, 2002 decision, the Court will remand for further proceedings. Plaintiff's objection is sustained on this issue.[9]

Finally, Plaintiff argues that the ALJ failed to inquire of the VE whether his testimony conflicted with the DOT. This argument erroneously assumes that an ALJ must make a mechanical inquiry on this point any time a VE testifies. Such is not the case. Plaintiff cites to the Social Security Administration's Policy Interpretation Ruling for the proposition that an ALJ eliciting testimony from a VE has the affirmative responsibility to ask about any potential conflict between the expert's testimony and information provided in the DOT. *See* SSR 00–4p, "Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Informational in Disability Decisions," 2000 WL 1898704. In fact, the text of that ruling makes clear that such a duty arises only where a con-

9. The Magistrate Judge rejected Plaintiff's argument in a single footnote, finding that the ALJ complied with Judge Welsh's remand order, which asked whether Plaintiff was able to "perform *any* jobs that existed in the national economy." (R. 538) (emphasis added) However, it bears mentioning that it was Judge Green's order of remand that controls, and that order directs "further proceedings on the issue of whether the plaintiff suffers from a non-exertional impairment in the form of a hearing loss, and if so, the extent of the impairment." (R. 542) In any event, binding regulatory and judicial requirements ultimately govern, and as set forth above, those requirements mandate testimony and findings on whether Plaintiff could perform specific jobs that existed in significant numbers in the national economy. For this reason, the R & R is rejected and Plaintiff's objection is sustained.

flict "has been identified," or "[w]here there is an *apparent* unresolved conflict between VE ... evidence and the DOT." *Id.* at *1–2 (emphasis added). As the Seventh Circuit Court of Appeals has explained, the "ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation." *Donahue v. Barnhart,* 279 F.3d 441, 446–47 (7th Cir. 2002). The transcript of the hearing contains no mention of any possible conflict. (R. 503–21) Accordingly, the Court is of the opinion that the ALJ was under no duty to make such an inquiry, and Plaintiff's objection on this point is overruled.[10] Because the Magistrate Judge relied on different reasoning, the R & R is rejected on this point.

### D. Plaintiff's Alcoholism

 Plaintiff contends that the Commissioner failed to adequately consider his alcoholism as a basis for disability. As the

Magistrate Judge correctly notes in the R & R, Plaintiff's argument is foreclosed by the Congressional amendment to the Social Security Act that, as of March 29, 1996, barred the award of disability benefits based upon alcoholism or drug addiction. *See Torres v. Chater,* 125 F.3d 166, 169 (3d Cir.1997) (citing amended 42 U.S.C. § 423(d)(2)(C)). This change in the law is retroactively applied to all disability claims that were not finally adjudicated by the Commissioner before March 29, 1996. *Id.* at 170–71. Plaintiff attempts to distinguish *Torres* from the instant matter, but for the reasons set forth in the R & R at 19–20, his argument is unavailing. Thus, because the ALJ did not render a final decision addressing Plaintiff's alcoholism until August 10, 1996, (R. 442–46), and for the reasons set forth in the R & R, Plaintiff's claim is foreclosed. The objection is overruled, and the Court will adopt the reasoning and conclusion of the R & R on this issue.

An appropriate Order follows.[11]

---

**10.** It appears that the Third Circuit has yet to speak to this issue, and thus in an abundance of caution, the ALJ may wish to make this inquiry nonetheless when addressing other issues on remand.

**11.** One final observation is in order. When Plaintiff made his most recent application for DIB he was fifty-four years old. Today, after five administrative hearings resulting in five administrative decisions, and after administrative and judicial actions resulting in five remands, Plaintiff is over seventy years old and his application is still before the Commissioner. The Court remands this case in order to rectify some of those errors, but in doing so contributes to what has already become an unconscionable delay in resolving Plaintiff's application.

The Third Circuit Court of Appeals has recognized that where a case is beset by "considerable inexplicable delays"; numerous hearings and appeals to address errors not attributable to the claimant; and the passage of many years, remand is not appropriate. Rather, a court may, all other requirements

being satisfied, direct the Commissioner to award benefits. *Morales,* 225 F.3d at 320; *see also Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir.1992) (remanding with order to award benefits) ("[W]e think it unconscionable to remand this eight year old case to the Secretary for further review."). This is not appropriate here because unlike the case in *Morales,* the medical evidence of record is mixed. *See Raymer v. Massanari,* No. Civ. A.97–5762, 2001 WL 1526265, at *6 (E.D.Pa. Nov.28, 2001) (refusing to award benefits and distinguishing *Morales* because record contained mixed evidence of disability). Moreover, because further testimony from a VE is needed, the record is not fully developed. *See Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir.1984) (decision to direct award of benefits "should be made only when the administrative record of the case has been fully developed"); discussion *supra* at Part III.C.

Congress did not impose deadlines when it created a process for resolving disability claims, and the Court is powerless to impose one. *See Heckler v. Day,* 467 U.S. 104, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984). However,

## ORDER

**AND NOW**, this 10th day of September, 2003, upon consideration of Plaintiff's Motion for Summary Judgment [Doc. # 13], Defendant's Motion for Summary Judgment [Doc. # 16], Plaintiff's Reply Brief [Doc. # 18], the Report and Recommendation of the Magistrate Judge [Doc. # 19], Plaintiff's Objections to the Magistrate Judge's Report and Recommendation [Doc. # 20], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**;

3. The Report and Recommendation is **APPROVED AND ADOPTED IN PART,** and **REJECTED IN PART**;

4. In accordance with the fourth sentence of 42 U.S.C. § 405(g), this matter is hereby **REMANDED** to the Commissioner of the Social Security Administration for proceedings consistent with the foregoing Memorandum Opinion;

5. The Commissioner is urged to give this case all priority and to expedite the remaining proceedings so this case may be resolved as promptly as practicable.

It is so **ORDERED.**

---

the Court cautions the Commissioner that she is "not entitled to adjudicate a case *ad infinitum* until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion." *Miller v. Chater,* 99 F.3d 972, 978 (10th Cir.1996) (internal quotes and citations omitted). Given its tortured procedural history, fairness dictates that Plaintiff's application be given some priority.