**Eddie L. STUTTS, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

Civil Action No. 06–G–1476–NW.

United States District Court, N.D. Alabama, Northwestern Division.

June 13, 2007.

Robert W. Bunch, Bunch & James, Florence, AL, for Plaintiff.

Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Loranzo M. Fleming, Social Security Administration–Office of General Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Eddie L. Stutts, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heck-*

*ler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## DISCUSSION

The court has carefully reviewed the record and finds that the decision of the ALJ must be remanded for further development of the record. The plaintiff argues in brief that the action should be remanded for further proceedings because the ALJ failed to properly consider whether the plaintiff meets Listing 12.05C. Listing 12.05C requires that the claimant have a "valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir.1993)(quoting Listing 12.05C).

■ When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination. *Davis* 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in *Edwards by Edwards v. Heckler:*

An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant"

requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir.1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.). The second part of the Listing, therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.") The diagnostic description in the introductory paragraph to Listing 12.00 defines mental retardation:

"Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."

Listings 12.05. This imposes three requirements: 1) Significant subaverage general intellectual functioning; 2) deficits in adaptive functioning; and 3) the deficits must be manifested before age 22. *See Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir.1997)("To be considered for disability benefits under section 12.05, a claimant must at least (1) have significant-

ly subaverage general intellectual functioning; (2) have deficits in adaptive behavior;[1] and (3) have manifested deficits in adaptive behavior before age 22."). In this circuit, it is presumed that a person's I.Q. remains fairly constant throughout her life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. *Hodges v. Barnhart,* 276 F.3d 1265, 1268–69 (11th Cir.2001). The *Hodges,* court recognized that although this circuit had not formally recognized this presumption, it had been implicitly recognized in *Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, she is presumptively disabled under the Listing if the other requirements of the Listing have been met. *Hodges,* 276 F.3d at 1269.

The language of 12.05 closely tracks the DSM–IV–TR definition of mental retardation. The phrase "significantly subaverage general intellectual functioning" is also used in the DSM definition of Mental Retardation. The DSM states that "general intellectual functioning" is defined by the intelligence quotient (IQ or IQ equivalent). DSM–IV–TR at 41. The DSM also defines "significantly subaverage intellectual functioning." "Significantly subaverage intellectual functioning is defined as an IQ of about 70 or below...." DSM–IV–TR at 41 Therefore, a valid IQ score of 70 or below satisfies the first requirement of the diagnostic description.

The second requirement of the diagnostic description of Listing 12.05 is the presence of "deficits in adaptive functioning."

This also is a requirement of the DSM: "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning." DSM–IV–TR at 42.

The DSM offers guidance in determining whether the diagnostic description of Listing 12.05 has been met. The DSM defines mild mental retardation as an I.Q in the range of 50–55 to approximately 70. The DSM description of Mild mental retardation contains the following:

> By their late teens, they can acquire academic skills up to approximately the sixth-grade level. During their adult years, they usually achieve social and vocational skills adequate for minimum self-support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress. With appropriate supports, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.

DSM–IV–TR at 43.

School records submitted to the ALJ by the plaintiff's attorney contain IQ testing performed when the plaintiff was in the fifth grade. Those records show IQ scores as follows:

| L.I.Q | N–L I.Q. | Tot. I.Q. |
|---|---|---|
| 82 | 60 | 72 |

[R 111] Because these IQ scores were achieved before the plaintiff reached the age of 16, they are not deemed to be valid as to the plaintiff's current level of intellectual functioning.[2] However, these scores

---

1. The 1992 version of Listing 12.05(C) referred to "adaptive behavior" rather than "adaptive functioning."

2. The Commissioner's regulations used to assess children's disability claims provide as follows:

> Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4

should have suggested to the ALJ that the plaintiff might meet Listing 12.05C in light of his finding that the plaintiff suffered from the severe impairment of degenerative disc disease of the lumbar spine. [R 13] This finding satisfies the second part of Listing 12.05C, which requires a physical or other mental impairment imposing additional and significant work-related limitation of function.

The vocational expert (VE) was questioned about the plaintiff's school records at the hearing. He testified that the records indicated the plaintiff, when tested in the eighth grade, was reading at the third grade, seventh month level. [R 349] The VE also testified that the IQ test administered when the plaintiff was 12 years old showed a "mental age well below the chronological age of 12 years, 6 months. Mental age is well below that." [R 350] The VE testified that "[t]he record reflects poor academic development of skills and with a low, borderline intellect, it's not surprising." [R 350] The VE was asked whether this was consistent "with the type of work that he has performed during his 15 year work history." [R 350] He responded: "Yes. His work history has been entirely unskilled." [R 350]

■ The testimony by the VE and the plaintiff's IQ scores contained in his school records should have alerted the ALJ to the possibility that the plaintiff meets Listing 12.05C. It is true, as argued by the Commissioner in brief, that plaintiff's counsel couched his questions to the VE in terms of illiteracy. It is also true that the pre-hearing order submitted by the plaintiff's

attorney indicated that the plaintiff did not allege the plaintiff met a Listing. However, an ALJ has a duty to develop a full and fair record even when the plaintiff is represented by counsel:

> Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. This obligation exists even if the claimant is represented by counsel, or has waived the right to representation.

*Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981) (citations omitted).

■ In the present case the ALJ failed to properly develop the record as to whether the plaintiff meets Listing 12.05C. The Commissioner's regulations provide that "[s]tandardized intelligence test results are essential to the adjudication of all cases of mental retardation that are not covered under the provisions of 12.05A." § 12.00 D(6)(b), 20 CFR Pt. 404, Subpt. P, App. 1. Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir.1988)(quoting *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir.1984)) (internal quotation marks omitted). In the present case, standardized IQ testing was essential to a determination of whether the plaintiff meets Listing 12.05C. Without such testing, the ALJ was unable to make an informed decision as to whether the plaintiff meets Listing 12.05C. According-

---

years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above.

§ 112.00 D(10), 20 CFR Pt. 404, Subpt. P, App. 1

ly, the action will be remanded for the administration of appropriate standardized intelligence testing in order to determine if the plaintiff meets Listing 12.05C. The court does not suggest that IQ testing is required in every case where borderline intellectual functioning is asserted. However, it is required in the present case based upon the combination of school IQ testing indicating an IQ of 60, the presence of an additional physical impairment satisfying the second part of 12.05C, and the absence of evidence suggesting the plaintiff did not meet the diagnostic criteria for mild mental retardation.

If after appropriate testing the plaintiff is not found to meet Listing 12.05C, the Commissioner shall consider whether an equivalency finding is warranted based upon the Social Security Administration's *Procedure and Operations Manual* (POMS). The POMS at DI 24515.056 D.I.C. provides that a medical equivalence determination may be based upon slightly higher IQ's (e.g. 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function.[3] Based on the medical records the ALJ found the plaintiff suffered from degenerative disc disease of the lumbar spine. The ALJ found that this impairment prevented the plaintiff from performing his past relevant work and significantly restricted his ability to perform work related activities.

An appropriate order will be entered contemporaneously herewith.

## FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration be and it hereby is REVERSED, and the case is REMANDED to the Commissioner pursuant to Sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the memorandum opinion entered contemporaneously herewith. This remand is not pursuant to Sentence six of 42 U.S.C. § 405(g)

Should this remand result in the award of benefits, plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*

---

**3.** The Eleventh Circuit Court of Appeals has noted that the POMS are useful, though not binding in determining whether a particular Listing has been met. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir.1991) ("The POMS directives are useful in considering the unique situation presented in post-polio cases, but the impairment that must be demonstrably met or equaled remains one listed in Appendix 1 to Subpart P. The facts and the law meet under the Listings, not under POMS."). Other circuits have also noted the persuasive, though not binding, authority of the POMS. *See e.g., Davis v. Secretary of Health and Human Services*, 867 F.2d 336, 340 (6th Cir. 1989).