**Rita A. VO, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**C.A. No. 9:06–1624–PMD–GCK.**

United States District Court,
D. South Carolina,
Beaufort Division.

Sept. 5, 2007.

Paul Townsend McChesney, McChesney and McChesney, Spartanburg, SC, for Plaintiff.

Beth Drake, U.S. Attorneys Office, Columbia, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

Plaintiff Rita A. Vo ("Plaintiff" or "Vo") brought this action for Disability Insur-

ance Benefits ("DIB") pursuant to Sections 216 and 223 of the Social Security Act and for Supplemental Security Income ("SSI") under Sections 1602 and 1614(a)(3)(A) of Title XVI of the Act, to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for DIB and SSI benefits under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. § 416(i); 42 U.S.C. § 423; 42 U.S.C. § 1381a. The record contains a Report and Recommendation ("R & R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 83.-VII.02(A), recommending the adoption of the Commissioner's final decision denying Plaintiff's claims for DIB and SSI. Plaintiff timely objected to the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that party may object, in writing, to a Magistrate Judge's R & R within ten days after being served with a copy).

## BACKGROUND

### A. Medical Evidence in Record

In the R & R, the Magistrate Judge thoroughly detailed the facts of this case, and Plaintiff filed no objection to the Magistrate Judge's recitation of the facts. However, for the sake of completeness, the court will reiterate the facts.

Plaintiff was born on June 6, 1961, and was forty-two years old on June 12, 2002, the date Plaintiff alleges she became disabled due to severe back and shoulder problems and severe depression. (Tr. 31.) She has a high school equivalent education and has worked in the past as a certified nursing assistant, textile spinner, and housekeeper. (Tr. 80, 85, 93, 120.)

In the early morning of June 13, 2002, Plaintiff sustained a neck abrasion and right leg contusion in a motor vehicle accident. (Tr. 127–31.) According to the emergency room medical records at the hospital where Plaintiff was treated, Plaintiff was alert and oriented to person, place, and time. (Tr. 130, 128.) She reported mild bilateral shoulder pain (Tr. 130) and demonstrated intact musculoskeletal functioning, including a nontender neck. (Tr. 128, 130.) Left shoulder x-rays were normal, and cervical spine x-rays revealed moderate spondylitic changes and mild disc space narrowing at C5–6 level without acute bony abnormality. (Tr. 132–33.) Plaintiff was treated with Anaprox and Darvocet and was released. (Tr. 127, 129.)

Records from Clinton Family Practice, including those of Edgar Barnard, M.D., reveal treatment with medication in June and July of 2002 for complaints of hand, bilateral shoulder, and back pain. (Tr. 135–38, 154–55, 193–94.) Examinations revealed full neck ranges of motion, full extremity ranges of motion, normal extremities, negative straight leg raise testing, and the absence of focal neurological deficits. (Tr. 136–38, 154, 193.) Bilateral shoulder x-rays were normal. (Tr. 139.) An MRI of Plaintiff's thoracic spine was performed on July 10, 2002, and that MRI revealed a moderate central disc protrusion at the C5–C6 level and possible mild neural foramen stenosis at C5. (Tr. 144.) Dr. Barnard concluded that Plaintiff had no functional limitations. (Tr. 155, 194.)

Dr. Barnard referred Plaintiff to John Steichen, M.D., a neurologist, who examined her twice between July 8 and 17, 2002. (Tr. 142–43.) While Plaintiff complained of mid-thoracic back pain, she denied neck and low back pain. (Tr. 143.) Dr. Steichen concluded that Plaintiff's neurological examination was objectively normal but ordered a thoracic MRI scan, which revealed some "mild narrowing at the C5/6 level." (Tr. 142–43.) He concluded that "[t]here is no clear anatomic explanation" for Plaintiff's symptoms and recommended Plaintiff see a physical med-

icine and rehabilitation specialist. (Tr. 142.)

Records of Kevin W. Kopera, M.D., of Greenville Health Corporation's Center for Health and Occupation Services revealed treatment with oral medication and medication injections between August 19, 2002, and April 9, 2003, for lumbar spine pain, thoracic spine pain, and right shoulder pain. (Tr. 156–63.) Plaintiff was also treated with Paxil for depression. (Tr. 156–58.) In August of 2002, the record indicates muscle stretch reflexes were intact and symmetrical in the lower extremities, and straight leg testing did not produce radicular symptoms. (Tr. 163.) Furthermore, there was pain with palpation over the right upper trapezius muscle but not over the right shoulder joint itself. (Tr. 163.) Range of motion at the right shoulder was normal but did seem to intensify the pain in the area of the right trapezius muscle and right clavicle region, and range of motion at the cervical spine was within normal limits. (Tr. 163.) Records from September of 2002 indicates an x-ray of Plaintiff's right shoulder was normal but that she is still experiencing right shoulder pain. (Tr. 161.) Notes indicate there was pain both anteriorly and posteriorly over the right shoulder with deep palpation. (Tr. 161.) Records from October of 2002 indicate Plaintiff had undergone an MRI of the right shoulder revealing evidence of tendinitis "with perhaps a partial tear of the distal supraspinatus tendon but no evidence of a full thickness tear." (Tr. 160.) In November of 2002, Dr. Kopera's notes indicate that his examination revealed "discomfort with abduction of the right shoulder and localized pain with deep palpation over the anterior aspect of the right shoulder." (Tr. 159.) Later in the month, notes from an outpatient visit indicate an improvement with respect to Plaintiff's right shoulder; she was able to forward flex her right shoulder without difficulty, and internal and ex-

ternal rotation appeared normal. (Tr. 158.) An impingement test was negative, and "there was some increased pain with maximum abduction and extension of the right shoulder with continued pain with deep palpation over the anterior aspect of the right shoulder." (Tr. 158.) December 2002 records reveal mild pain with deep palpation over the thoracic spine and that range of motion was restricted in terms of adduction and extension of the right shoulder similar to prior visits. (Tr. 157.)

Plaintiff indicated her pain was a ten on a scale of zero to ten, ten being the worst, and that she was depressed. (Tr. 158, 162.) She reported that she had experienced improvement in her right shoulder with treatment, including treatment with ibuprofen, and that she experienced minimal right arm pain while in a neutral position. (Tr. 158, 160.) Plaintiff further reported that she experienced improvement in back pain with ibuprofen and that she resolved right-sided pain in the thoracic and lumbar portions of the spine with physical therapy. (Tr. 158, 161.) She also indicated she experienced improvement in her depression with Paxil. (Tr. 156–57.) On October 3, 2002, Dr. Kopera concluded that Plaintiff's right shoulder symptoms were improving but that she could not return to work as a certified nursing assistant. (Tr. 160.)

Plaintiff underwent physical therapy between August 23 and September 16, 2002. (Tr. 147–53.)

In a statement dated December 17, 2002, Plaintiff reported that she took Paxil. (Tr. 84.) In a statement dated February 20, 2003, she reported that she took care of her personal needs without assistance, performed limited household cleaning and other chores, and shopped occasionally. (Tr. 101–03.) She also reported that she took Paxil for depression. (Tr. 101.)

On April 11, 2003, Steven J. Fass, M.D., concluded Plaintiff retained the residual functional capacity (RFC) to lift fifty pounds occasionally and twenty-five pounds frequently; stand/and or walk and sit six hours in an eight-hour workday; push/pull with her lifting capacity; balance, stoop, kneel, crouch, crawl, and climb ramps and stairs frequently; climb ladders, ropes or scaffolds, and reach overhead with the right upper extremity occasionally; and that she had no visual, communicative, environmental, or other manipulative limitations. (Tr. 166–73.) It was noted that the "severity of pain while understandably subjective seems disproportionate to medical evidence." (Tr. 171.)

In a statement dated May 7, 2003, Plaintiff reported caring for her own needs with difficulty and that she performed limited household cleaning and other chores. (Tr. 109.)

Plaintiff was hospitalized between May 13 and 14 of 2003, after she took approximately 75 Flexeril. (Tr. 188–90, 192.) Examination revealed nontender extremities with normal ranges of motion. (Tr. 191.) She was monitored and treated with antidepressant medication, and she was discharged with referral to outpatient mental health treatment. (Tr. 188–89.)

Anne B. Hane, a professional counselor, counseled Plaintiff in a single session on May 22, 2003. (Tr. 195.) Plaintiff reported depressive symptoms, including crying, isolation, and sleep difficulty due to her motor vehicle accident leaving her unable to perform her previous job, her discovery of her spouse's infidelity, and feeling taken advantage of by her daughter in being used as a babysitter. (Tr. 195.) She denied any further suicidal plan, and although a subsequent counseling appointment was scheduled, Plaintiff cancelled that appointment and failed to reschedule. (Tr. 196.)

Records of John M. Hibbits, M.D., between June 6, 2003, and December 13, 2004, revealed treatment with medication injections and exercise for right shoulder, back, and hip pain. (Tr. 229, 232–33.) Records from a February 2004 visit revealed Plaintiff reported she had been bedridden for acute back pain until one week previously. (Tr. 233.) Examinations revealed lumbar paraspinal muscle spasm, significant right shoulder weakness to resistance on external rotation, and reduced right shoulder ranges of motion. (Tr. 229, 232–33.) Examinations also revealed a smooth gait, the absence of obvious paraspinal muscle spasm, symmetrical upper extremity deep tendon reflexes, intact upper extremity sensation, and only mild right shoulder tenderness. (Tr. 232.) An MRI of Plaintiff's right shoulder revealed advanced tendonosis without evidence of a tear through other tendons, a subchrondal cystic change, and degenerative arthritic changes of the acromioclavicular joint with some decrease in subacromial space and associated mild subacromial/subdeltoid bursitis. (Tr. 231.) Plaintiff reported her back pain improved with a home exercise program. (Tr. 232.)

Louis J. Dolinar, M.D., a consultative psychiatrist, examined Plaintiff on November 13, 2003. (Tr. 197–99.) Plaintiff reported back, shoulder, and hip pain, and that Drs. Hibbits and Kopera had advised her that she should never work again. (Tr. 197.) She reported depression, suicidal ideation, and a peculiar thought process, but she denied auditory hallucinations. (Tr. 197–98.) Examination revealed moderate to severe depression and anxiety and passive suicidal ideation, but also the absence of overt delusions, hallucinations, thought disorder, or gross disorientation, and estimated average intelligence. (Tr. 198.) Dr. Dolinar diagnosed a single episode of severe major depression and a generalized anxiety disorder. (Tr. 198.)

He noted Plaintiff's social function appeared severely constricted, her ability to concentrate and persist to task completion appeared mildly to moderately impaired by informal mental status examination, work related function and reasoning appeared colored by pessimism, and occupational, personal, and social adjustments appeared severely impaired. (Tr. 199.)

On November 26, 2003, a second state agency physician concluded Plaintiff retained the physical RFC to lift fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk and sit six hours in an eight-hour workday; push/pull with her lifting capacity with the left upper extremity and the lower extremities; balance, stoop, kneel, crouch, crawl, and climb ramps and stairs frequently; and climb ladders, ropes, or scaffolds, push/pull with the right upper extremity, and reach overhead with the right upper extremity occasionally; and that Plaintiff had no visual, communicative, environmental, or other manipulative limitations. (Tr. 221–28.)

Robert E. Boyd, M.D., a rheumatologist, prepared a report dated February 23, 2005 regarding his examination of Plaintiff. (Tr. 235–37.) Plaintiff reported neck and bilateral shoulder injuries (right greater than left), and elbow, hand, low back, hip, knee, and bilateral foot pain. (Tr. 235.) Examination revealed normal reflexes, normal motor functioning, normal sensory functioning, fibromyalgia-like muscle tenderness, full cervical spine ranges of motion, "some slight" paralumbar soft tissue tenderness, good passive elbow movement, good passive shoulder movement, and good passive hip movement. (Tr. 236.) Dr. Boyd diagnosed probable chronic pain disorder or a fibromyalgia-like process with "some modest amount" of osteoarthritis. (Tr. 235–36.) He recommended conservative treatment with medication, including the use of a muscle relaxant, an antide-pressant, and nonprescription anti-inflammatory medications. (Tr. 237.)

Plaintiff was referred to mental health treatment on May 16, 2005, due to depression and adjustment difficulties. It was noted that she was taking antidepressant medication. (Tr. 240.)

In an undated statement, Plaintiff reported that she took Lexapro, Relafen, Estratest, and Extra Strength Tylenol. (Tr. 117.) In a different undated statement, Plaintiff reported that she took hydrochlorothiazide, Relafen, Elavil, Flexeril, Synthroid, Wellbutrin, Senokot, and Extra Strength Tylenol. (Tr. 119.)

### B.   Testimony at Hearing

A hearing was held before Albert A. Reed, Administrative Law Judge ("ALJ"), on June 23, 2005. (Tr. 270.) Plaintiff testified that she had back problems, fibromyalgia, a torn rotator cuff in her right shoulder with osteoarthritis, bursitis in her hips, and "bad depression." (Tr. 270.) She testified that she can barely dress herself but is able to bathe herself as long as someone else is in the house in the event of a fall. (Tr. 273.) She testified that she is able to cook light things (presumably meaning things that require little effort to cook) and wash dishes every now and then. (Tr. 273.) She testified that if she were to sweep, she could sweep one room but would have to sit down for an hour before she could sweep another. (Tr. 273.) She also testified that she is able to do laundry with assistance. (Tr. 273–74.) Furthermore, Plaintiff stated that she rarely goes grocery shopping. (Tr. 274.) Plaintiff testified that she was back in counseling, having returned to counseling the Thursday before the hearing. (Tr. 274–75.)

Robert E. Brabham, Jr., a vocational expert ("VE") testified at the hearing. The ALJ stated,

Assume an individual who is limited to light exertional work, as defined in the regulations. That's because of back problems and a shoulder impingement problem. And assume an individual of the Claimant's education, past job experience, with restrictions which require, because of depression and anxiety, simple, routine work, a low-stress environment. And that's one that requires few decisions. No more than occasional interaction with the public, no ladders, no ropes or scaffolds, and that's because of the shoulder impingement. Frequent ramps and stairs. No reaching overhead with the right dominant arm. Based on this profile, would there be jobs available the individual could perform? And if so, would you provide examples of such and the approximate numbers present?

(Tr. 277.) The VE answered that there would be jobs in the regional and national economies that such an individual could perform. (Tr. 277.) The VE listed the following jobs: unskilled light handpacker, machine tender, and garment folder. (Tr. 277–78.) The ALJ then asked that if he added to those restrictions such that there was "no more than frequent handling with the right upper extremity," the VE testified the number of positions available would decrease by fifty percent. (Tr. 278.) Assuming an individual (1) limited to sedentary exertional work (2) with Claimant's education, past job experience (3) with restrictions of simple, routine, and low-stress work, (4) limited to occasional interaction with the public, (5) no ladders, no scaffolds, frequent ramps and stairs, (6) but no reaching overhead with the right dominant arm, the VE was able to identify the following jobs: unskilled sedentary machine tender, surveillance monitor, sedentary unskilled production worker. (Tr. 279.) The VE provided the incidence of these jobs in the regional and national economies. (Tr. 279.)

## C. The ALJ's Decision

In a decision dated August 17, 2005, the ALJ determined Plaintiff had a "severe" thoracic lumbar strain, rotator cuff tendonitis, and depression but that she did not have an impairment that met or medically equaled one listed in 20 C.F.R. part 404, subpart P, appendix 1. (Tr. 40.) He found that Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 40.) He further found Plaintiff had the following RFC: "for light work as defined in the regulations with restrictions which require, because of depression and anxiety; simple, routine work in a low stress environment (which I define as requiring few decisions); with no more than occasional interaction with the public; no climbing of ladders, ropes or scaffolds due to the shoulder impingement; frequent ramps and stairs and no overhead reaching with the right dominant hand." (Tr. 40.) The ALJ determined that, although Plaintiff could not perform her past relevant work, in light of VE testimony and other evidence in the record, there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 40.) The ALJ thus determined that Plaintiff was not disabled. (Tr. 41.)

Evidence dated after the period at issue in this case indicates that in a statement dated January 30, 2006, Dr. Hibbits stated that Plaintiff had significantly limited internal and external right shoulder rotation due to changes in her right shoulder. (Tr. 251.) Dr. Hibbits stated that such changes would likely deteriorate without intensive physical therapy and/or surgery. (Tr. 251.) He further stated that any lifting with the right arm "would be limited to some extent." (Tr. 251.) He also noted that Plaintiff had hip and back problems which limited her functioning but which were more difficult to assess as to their persistence and severity. (Tr. 251.)

## D. The Commissioner's Findings

In making his determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's thoracic lumbar strain, rotator cuff tendonitis and depression are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: for light work as defined in the regulations with restrictions which require, because of depression and anxiety; simple, routine work in a low stress environment (which I define as requiring few decisions); with no more than occasional interaction with the public; no climbing of ladders, ropes or scaffolds due to the shoulder impingement; frequent ramps and stairs and no overhead reaching with the right dominant hand.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965) except for that of a housekeeper as it is normally performed.

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferrable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical–Vocational Rule 202.21 as a framework for decision-making, there are additional significant number of jobs in the national economy that she could perform. Examples of such jobs include the light unskilled jobs of handpacker (DOT# 920.687–166) with 10,000 jobs in South Carolina and 375,000 nationally, machine tender (DOT# 920.685–086) with in excess of 20,000 jobs in South Carolina and 800,000 nationally and the job of garment folder (DOT# 789.687–066) with 1,000 jobs in South Carolina and in excess of 39,000 nationally. The vocational expert also testified to the sedentary unskilled jobs of machine tender (DOT# 731.685–014) with 7,000 jobs in South Carolina and in excess of 275,000 nationally, surveillance monitor (DOT# 379.367–010) with 1,000 in South Carolina and in excess of 40,000 nationally and production worker in a manufacturing setting (DOT# 779.687–018) with 1,000 in South Carolina and in excess of 38,000 nationally.

13. The Administrative Law Judge additionally restricted the individual to no more than frequent handling with the right upper extremity because of shoulder problems for handling to which the vocational expert testified that the numbers would possibly be reduced but not eliminated by 50 percent. Although I did not find the claimant to be so limited, this is further evidence of the jobs the claimant could perform.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 39–41.)

### E. The Magistrate Judge's R & R

In the R & R, the Magistrate Judge stated,

> Under the Social Security Act, ... this court's scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990).

(R & R at 14.) After noting the ALJ determined Plaintiff was not under a disability as defined by the Social Security Act, he noted that Plaintiff raised one issue in her brief: whether the Commissioner's decision is supported by substantial evidence. (R & R at 17.) According to the Magistrate Judge, "[t]he administrative record in this case abundantly supports the Commissioner's decision that there was a significant number of jobs in the national economy Plaintiff could perform despite her impairments." (R & R at 18.) Furthermore, the Magistrate Judge determined substantial evidence supported the ALJ's conclusion that Plaintiff was not disabled under the Social Security Act. (R & R at 20, 29.)

## STANDARD OF REVIEW

### A. Magistrate Judge's R & R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R & R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R & R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R & R, and Plaintiff's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts. However, the court modifies the R & R.[1]

### B. Judicial Review Under Social Security Act

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Consequently, judicial review ... of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d

---

1. In her brief, the Plaintiff appeared to make one argument: that the Commissioner's decision was not supported by substantial evidence; the Magistrate Judge addressed this argument in his R & R. *After* the Magistrate Judge issued the R & R, Plaintiff *then* argued the Commissioner did not apply the correct law in his decision. However, because Plaintiff's arguments concerning the correct legal standard appear within the body of her brief, the court now addresses the merits of those arguments.

287, 290 (4th Cir.2002). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984) (quoting *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir.2001) (alteration in original).

### ANALYSIS

■ Plaintiff objects to the R & R, arguing "it applies an erroneous standard of review." (Objections at 1.) Plaintiff asserts that while the R & R initially set out the proper standard, "which requires evaluating both whether there is substantial evidence to support the decision below and also whether proper legal standards were applied," it then "states an incorrect standard, . . . neglecting the duty of the court to determine whether proper legal standards were applied." (Objections at 1.)

Plaintiff first argues that with respect to fibromyalgia and pain, "the ALJ's rejection of her symptoms is legally improper where she has produced evidence of a condition which can cause the alleged symptoms, but the ALJ has failed to decide whether it is capable of producing the symptoms she alleges, and has failed to explain why he does not find that it does." (Objections at 2.) Plaintiff asserts that while the R & R lists several reasons to show that there was good cause to reject Vo's pain, "[t]he problem with this conclusion is that it is the Magistrate Judge's

alone" because the ALJ did not give those reasons (or any other reasons) for not concluding that Vo's fibromyalgia was capable of causing her pain. (Objections at 2.)

In Response, Defendant argues the ALJ "properly did not find medically determinable fibromyalgia." (Reply at 1.) According to Defendant, the only evidence of fibromyalgia was a diagnosis by Dr. Boyd, a rheumatologist, "who, based upon only one examination, determined that Plaintiff had a 'probable' chronic pain disorder or a 'fibromyalgia-like process.'" (Reply at 1.) According to Defendant, "[s]uch a singular, equivocal conclusion simply does not equate with a definitive diagnosis or establish a 'severe' impairment for purposes of the Social Security Act." (Reply at 1.)

The Commissioner is charged with determining the existence of a disability. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is

disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro,* 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

■■■ If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. *See id.; see also Walls,* 296 F.3d at 290.

■■■ In *Mickles v. Shalala,* 29 F.3d 918 (4th Cir.1994), the Fourth Circuit stated,

This circuit has battled the Secretary for many years over how to evaluate a disability claimant's subjective complaints of pain. Though a subjective allegation of pain, standing all alone, shall not be conclusive evidence of disability, where the claimant proves the existence of a medical condition that could cause pain, the claimant's subjective complaints must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence.

*Mickles,* 29 F.3d at 919 (internal quotation marks and citations omitted). In order for pain to be disabling, there must be "at the threshold a showing by objective evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996).

Dr. Boyd's records contain an "impression" section which lists "fibromyalgia/chronic pain disorder." (Tr. 236.) His report states, "It would seem that she likely has a chronic pain disorder or a fibromyalgia-like process with some modest amount of osteoarthritis." (Tr. 235.) The report also indicates Plaintiff's "[m]usculoskeletal exam shows very prominent fibromyalgia-like muscle tenderness with positive jump sign. This is quite typical for myofascial pain or fibromyalgia." (Tr. 236.) Furthermore, at the hearing before the ALJ on June 23, 2005, Plaintiff testified that she had back problems, fibromyalgia, a torn rotator cuff in her right shoulder with osteoarthritis, bursitis in her hips, and "bad depression." (Tr. 270.) According to Plaintiff, the "ALJ acknowledged that Vo was diagnosed with fibromyalgia, but never evaluated whether it could produce her pain." (Objections at 4.)

Although the ALJ noted Dr. Boyd's assessment, his findings do not reveal that he considered fibromyalgia or the pain that it could produce. The "findings" section of the ALJ's opinion states,

3. The claimant's thoracic lumbar strain, rotator cuff tendonitis and depression are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are

not totally credible for the reasons set forth in the body of the decision.

(Tr. 40.)  The ALJ's opinion also states,

> After careful review of the entire record, I find that evidence as to the claimant's condition, activities, and capabilities, including her testimony at the hearing as to pain and other subjective symptoms, is not consistent with the degree of disabling impairments she alleged.  Although the claimant has impairments that impose some limitations upon her ability to work, the evidence fails to substantiate that her impairments, either singly or in combination, are of the severity as to preclude the performance of all work-related activities.  It is noted that while Dr. Kopera indicated that she could not return to her certified nursing assistant job, she was undecided about what other jobs to pursue leading to the conclusion that she was not totally disabled from all work activity.  Therefore, I do not find the claimant's allegations totally credible to preclude all work activity.

(Tr. 36–37.)

In *Vega v. Commissioner of Social Security,* 265 F.3d 1214 (11th Cir.2001), the Eleventh Circuit reversed the district court's order affirming the Commissioner's denial of disability insurance benefits.  *See Vega,* 265 F.3d at 1216.  In that case, Vega argued the ALJ "erred in failing to make a finding that she suffered from CFS [(chronic fatigue syndrome)] and erred in failing to credit any of her subjective complaints about fatigue, poor concentration, and memory difficulties as reasonably attributable to CFS." *Id.* at 1219.  Medical records indicated that two doctors diagnosed Vega with CFS, and as a result, "the ALJ should have acknowledged [the diagnosis] in his evaluation and discussed why he disregarded it." *Id.* The court continued, "We agree with the reasoning of our sister circuits, as well as our prior case law, holding that remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Id.* The court thus remanded the case, indicating the district court should remand the case to the ALJ for consideration, *inter alia,* of Vega's evidence of CFS. *Id.* at 1220.

In an unpublished opinion, the Ninth Circuit concluded an ALJ erred by improperly rejecting a treating neurologist's retrospective diagnosis.  *See Petersen v. Barnhart,* 213 Fed.Appx. 600, 602 (9th Cir. 2006).  After noting that a treating physician's opinion can only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record," the court stated the diagnosis of multiple sclerosis ("MS") must be credited because the ALJ gave a legally insufficient reason for rejecting it. *Id.* In light of that holding, the court concluded that the ALJ's determination at step two that Peterson had only " 'possible multiple sclerosis' is not supported by substantial evidence." *Id.* The court stated,

> Because the ALJ's conclusions regarding the MS diagnosis and the Petersens' functional impairment evidence cannot stand, the Commissioner's argument that the ALJ properly rejected Petersen's MS at step two because it was not shown to be severe is not persuasive.  A diagnosis of MS alone cannot satisfy the step two inquiry.  Petersen must also show her medically discernable impairments are severe.  The ALJ correctly noted that Dr. Wambaugh's opinion did not attest to the level of functional impairment Petersen suffered before her date last insured.  However, the ALJ was required to consider subjective symptom testimony, in addition to medical evidence, when assessing the severity of Petersen's MS. Because we hold the ALJ improperly rejected the testimony

offered by Petersen and her husband, it is necessary to remand for a decision on the severe impairment question premised on a proper view of the record.

*Id.* at 604.

In *Thompson v. Barnhart*, 281 F.Supp.2d 770, 777 (E.D.Pa.2003), the court remanded a case to the ALJ because the ALJ did not "adequately address" Dr. Javian's opinion. The ALJ's decision did mention the treatment the plaintiff received from Dr. Javian, but "nowhere does it ... squarely confront Dr. Javian's conclusion that [p]laintiff was disabled to some degree, and that he should retire at a disability status." *Thompson*, 281 F.Supp.2d at 776. The court continued, "This omission is contrary to an ALJ's duties, for when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them, and in doing so an explanation of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* at 776–77 (internal quotation marks and citations omitted). The plaintiff also argued the ALJ ignored Dr. Stein's opinion and failed to provide an adequate explanation for rejecting his views. *Id.* at 777. Dr. Stein concluded the plaintiff had disc damage which caused considerable pain and noted "the appearance of an overbearing emotional reaction which, when combined with disc damage, rendered Plaintiff disabled." *Id.* The district court overruled the plaintiff's objection with regarding Dr. Stein's opinion, noting the ALJ's decision specifically mentioned Dr. Stein's examination. *Id.* Furthermore, the ALJ noted that a subsequent psychiatric evaluation concluded "there was no evidence of psychiatric impairment or emotional disorder." *Id.* The court concluded the ALJ's rejection of Dr. Stein's opinion was supported by substantial evidence because

"Dr. Stein's finding of disability was based in part upon Plaintiff's emotional conclusion, which was later found to have no psychological basis ..." *Id.*

In the case *sub judice*, the ALJ noted Dr. Boyd's assessment but did not discuss what weight, if any, he gave to this assessment. The ALJ failed to do so even though (1) Plaintiff claimed she had fibromyalgia at the hearing and (2) the ALJ questioned Plaintiff regarding fibromyalgia. Pursuant to the reasoning in *Vega, Petersen,* and *Thompson,* the court finds the ALJ had the obligation to explain his reasons for rejecting Dr. Boyd's assessment. While the ALJ may have had adequate reasons for rejecting the opinion, because he failed to disclose his reasons for doing so, the court finds remand appropriate. *See Duff v. Barnhart,* 121 Fed. Appx. 697, 699 (9th Cir.2005) (reversing district court's order affirming Commissioner's decision to deny benefits, *inter alia,* because the ALJ "erred in rejecting without discussion" a physician's diagnosis of somatization disorder); *Goodson v. Barnhart,* 217 F.Supp.2d 892, 900–01 (N.D.Ill.2002) (remanding the case to the Commissioner where the ALJ acknowledged the record contained evidence of a psychotic disorder but did not include the psychotic disorder in his findings or cite to any medical report or opinion that contradicted the evidence of a psychotic disorder); *Bates v. Apfel,* 69 F.Supp.2d 1143, 1150 (N.D.Iowa 1999) (remanding the matter to the Social Security Administration where the ALJ mentioned the plaintiff's allegation of chronic pain syndrome, did not mention a recent diagnosis of chronic pain syndrome, and did not further discuss the condition; "the absence of any discussion of the impact of chronic pain syndrome upon Bates's disability suggests the issue was never considered"); *see also White v. Barnhart,* 415 F.3d 654, 658 (7th Cir.2005) (agreeing with the magistrate

judge that where the ALJ discounted a physician's conclusion that the plaintiff suffered from somatoform because "there was no documentation of medically determinable somatoform," the ALJ was not required to assign controlling weight to a physician who did not qualify as a treating physician and who examined the plaintiff only once); *cf. Doss v. Barnhart*, 137 Fed.Appx. 689 (5th Cir.2005) (affirming district court's order affirming Commissioner's denial of social security disability benefits; while the plaintiff argued the ALJ did not address the impact of her depression on her RFC, "[t]he record indicates that the ALJ considered all the objective medical evidence presented" by the plaintiff, and he determined the plaintiff "did not have a longitudinal history of depression and had not been diagnosed with depression by a psychologist or a psychiatrist"). Furthermore, as Plaintiff produced some objective evidence of a medical impairment that could reasonably be expected to cause her pain, it was erroneous for the ALJ to completely omit it from his analysis. *See Mickles*, 29 F.3d at 919.

■ Plaintiff's second objection is that is that the Magistrate Judge erred in concluding there was "good cause to reject" the "Agency's own consulting psychologist's opinion" when the ALJ "failed to state the weight" he gave to the opinion. (Objections at 5.) Plaintiff asserts that since the ALJ determined her mental impairment was severe, "it was crucial that he explicitly evaluate the medical limita-

tions found by Dr. Dolinar," who found that Plaintiff "is 'moderately-to-severely depressed and anxious,' has a GAF [(global assessment of functioning)] of 45 (which indicates very severe mental limitations), and has severely impaired 'occupational, personal, and social adjustments.'" (Objections at 5–6.)[2] Furthermore, Plaintiff asserts that while the R & R states the ALJ's decision indicated Dr. Dolinar's opinion was inconsistent with his findings, such a statement is not contained within the ALJ's decision. (Objections at 6.)[3] According to Plaintiff, "[w]here the ALJ acknowledges the presence of a mental impairment which restricts the ability to work, it is error for him not to state the weight given his own consulting psychologist's opinion of Vo's mental limitations." (Objections at 6.)

The ALJ's opinion states,

A consultative evaluation was performed by Dr. Louis J. Dolinar on November 13, 2003. Mental status examination revealed the claimant was moderately to severely depressed and anxious. Her intellect was estimated as average and she had no overt delusions, hallucinations, thought disorder or gross disorientation. Diagnosis was major depression, single episode, severe without psychotic features and a generalized anxiety disorder.

. . .

I have evaluated the medical evidence concerning the claimant's depression and anxiety and find that the evidence,

---

2. The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The scale ranges from 0 to 100, with serious impairment in functioning at a score below 50, moderate difficulty in functioning at 60 or below, some functioning difficulty at 70 and below, and so forth. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed.1994).

*Howell v. Barnhart*, No. 7:05 CV 00099, 2006 WL 337540, at *3 (W.D.Va. Feb. 14, 2006).

3. The court has reviewed the ALJ's decision, and like Plaintiff, finds no statement therein that the ALJ did not give weight to Dr. Dolinar's opinion because it was inconsistent with his findings.

as considered under Sections 12.04 and 12.06 of the Listings, reveals that such disorders result in moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate deficiencies of concentration, persistence or pace and no evidence of repeated episodes of deterioration or decompensation of extended duration. The effect of these limitations is to further restrict the claimant's residual functional capacity to preclude work other than simple, routine work in a low stress environment (one that requires few decisions) with no more than occasional interaction with the public.

(Tr. 34–35.)

The ALJ's decision thus does not specifically state the amount of weight the ALJ gave to the evidence from Dr. Dolinar. However, the ALJ did find Plaintiff's depression to be a severe impairment, and he found her depression resulted in "moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate deficiencies of concentration, persistence or pace and no evidence of repeated episodes of deterioration or decompensation of extended duration." (Tr. 35.) While the ALJ did not mention the GAF score of 45, his finding that Plaintiff's depression results in moderate restrictions appears consistent with Dr. Dolinar's opinion that Plaintiff was moderately to severely depressed. The ALJ's finding also appears consistent with the other evidence in the record concerning Plaintiff's depression.[4]

In light of the fact that remand has already been deemed appropriate, the ALJ should discuss the weight he gives to Dr. Dolinar's opinion on remand. Several courts indicate that if an ALJ rejects a medical opinion, he or she must explain the reasons behind such a decision. *See Tiger v. Apfel,* 141 F.3d 1186, at 1998 WL 166246, *2 (10th Cir.1998) (unpublished table decision) ("Social Security Ruling 96–6p states that findings regarding the nature and severity of an impairment made by state agency consultants and other program physicians and psychologists must be treated as expert opinion evidence of non-examining sources. Further, ALJs may not ignore these opinions and must explain the weight given to these opinions in their decisions." (citations omitted)); *Strickland v. Harris,* 615 F.2d 1103, 1110 (5th Cir. 1980) ("An administrative law judge may not arbitrarily reject uncontroverted medical testimony."); *see Begley v. Astrue,* No. 2:06cv00027, 2007 WL 2138703, at *9 (W.D.Va. July 24, 2007) ("[W]hile an ALJ may not reject medical evidence for no reason or for the wrong reason, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings." (citation omitted)); *Patrick v. Barnhart,* No. Civ. A. SA03CA0735FBNN, 2004 WL 1618815, at *8 (W.D.Tex. June 23, 2004) ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions."); *Lechner v. Barnhart,* 321 F.Supp.2d 1015, 1034 (E.D.Wis.2004) (same as *Patrick); Worzalla v. Barnhart,* 311 F.Supp.2d 782, 798 (E.D.Wis.2004) ("As the report of an SSA consulting physician, the ALJ was required to evaluate it. *See* 20 C.F.R.

---

4. As previously noted, this evidence includes Plaintiff's indication that she experienced improvements in her depression with Paxil and that she was referred to an outpatient mental health treatment but only attended one counseling session. (Tr. 156–57, 188–90, 192, 196–96.)

§ 416.927(d). His failure to do so constitutes an error of law mandating reversal. *See, e.g., Godbey v. Apfel,* 238 F.3d 803, 808 (7th Cir.2000).")." Accordingly, the court instructs the ALJ to indicate whether he accepts Dr. Dolinar's opinion in full, and if not, explain the reasons for rejecting all or portions of that opinion.

■ Plaintiff's last objection is that the R & R "approves the ALJ's failure to first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis because he categorized her exertional category as light, and he gave the definition of the light category." (Objections at 6.) According to Plaintiff, "this ignores the unambiguous provision of the Ruling, that the ALJ must **first** assess function-by-function restrictions, physical and mental, and **then** may categorize the function as light or some other category." (Objections at 6–7.) In Response, Defendant argues the ALJ did not err in assessing Plaintiff's RFC.

Social Security Ruling 96–8p states,

The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96–8p. The ruling also states,

[A] failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions. This could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work as

it is generally performed and an erroneous finding that the individual is not disabled.

*Id.*

The ALJ's decision contained the following passages:

Upon review of the total evidence of record, and in consideration of the combined effect of the claimant's impairments, including all severe impairments, nonsevere impairments, and subjective complaints, I find that the claimant retains the residual functional capacity for light work as defined in the regulations with restrictions which require, because of depression and anxiety, simple, routine work in a low stress environment (which I define as requiring few decisions), with no more than occasional interaction with the public; no climbing of ladders, ropes or scaffolds due to the shoulder impingement; frequent ramps and stairs and no overhead reaching with the right dominant hand because of her shoulder problems.

. . .

Based upon the claimant's residual functional capacity, she is capable of performing a significant range of light work as defined in 20 CFR §§ 404.1567 and 416.967.

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, we determine that she can also do sedentary

work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.

(Tr. 37–38.)

The United States District Court for the Northern District of Illinois explained the requirements of Social Security Ruling 96–8p:

> In determining a claimant's RFC, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. The ALJ must separately consider and discuss the [c]laimant's ability to perform each of the seven strength demands— sitting, standing, walking, lifting, carrying, pushing and pulling—on a regular and continuing basis of eight hours a day, five days a week. This function-by-function analysis must be performed before an ALJ can express a [c]laimant's RFC in terms of the exertional levels of work, such as sedentary, light or medium.

*Unger v. Barnhart,* 507 F.Supp.2d 929, 940–41 (N.D.Ill.2007) (citations omitted). In that case, the ALJ recited the medical expert's testimony and medical opinions and concluded there was no "convincing evidence that ... the claimant did not have residual functional capacity to perform the full range of sedentary work." *Id.* However, because the ALJ failed to conduct a function-by-function analysis of the claimant's abilities, the court stated it could not "conclude that his RFC determination is supported by substantial evidence and free from legal error." *Id.* The court thus remanded the case. *Id.*

Similarly, in *Matejka v. Barnhart,* 386 F.Supp.2d 198 (W.D.N.Y.2005), the ALJ's RFC findings stated,

> Considering the entire record, the undersigned finds the claimant is limited to sedentary work, or work performed primarily in a seated position and not re-

quiring lifting more than 10 pounds. Additionally, she is precluded from climbing or crawling and can only occasionally balance, stoop, kneel, or crouch.

*Matejka,* 386 F.Supp.2d at 208. The court found this RFC was not supported by substantial evidence because the decision failed to make a function-by-function analysis of Plaintiff's RFC and "did not address plaintiff's ability to sit, stand, or walk." *Id.* However, in *Salles v. Commissioner of Social Security,* 229 Fed.Appx. 140, 149 n. 5 (3d Cir.2007), the Third Circuit found the ALJ's RFC assessment supported by substantial evidence even though the ALJ's finding that the claimant could return to her former job did not follow a function-by-function analysis of her limitations.

Plaintiff does not appear to assert the ALJ's RFC determination is not supported by substantial evidence; rather, her sole argument is that the ALJ should have assessed her abilities on a function-by-function basis before expressing her RFC in terms of the exertional level of work. Although not all courts would remand for this reason, in light of the fact that remand has already been deemed appropriate, the court instructs the ALJ to explicitly discuss Plaintiff's abilities on a function-by-function basis in accordance with Social Security Ruling 96–8p. Furthermore, remand is appropriate in light of the court's ruling on Plaintiff's first objection, as the ALJ's consideration of Plaintiff's evidence of fibromyalgia may alter his determination of Plaintiff's RFC.

## CONCLUSION

After a careful examination of the record as a whole, the court cannot conclude that the ALJ's decision to deny benefits was based on correct legal principles and was supported by substantial evidence. It is, therefore, **ORDERED,** for the forego-

ing reasons, that the Commissioner's denial of benefits is **REVERSED,** and the matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.[5]

**AND IT IS SO ORDERED.**

---

5. "Should this remand result in the award of benefits, plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*" Language taken from *Stutts v. Astrue,* 489 F.Supp.2d 1291, 1295 (N.D.Ala.2007).